Alphonso Joe WILLIAMS, Plaintiff In Error,

v.

The STATE of Oklahoma, Defendant In Error.

No. A–12553.

Criminal Court of Appeals of Oklahoma.

Feb. 12, 1958.

Charles C. Dunn, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Alphonso Joe Williams was charged by information in the district court of Tulsa County with the crime of robbery by force and fear, after former conviction of a felony; was tried before a jury, convicted and penalty fixed at ten years confinement in the state penitentiary at McAlester.

■ Petition in error and casemade were filed in this court on October 23, 1957 and brief was due thirty days thereafter, but none has ever been filed, and no one appeared to represent the defendant when the case came on for oral argument on January 15, 1958. Under such circumstances this court will examine the record to ascertain whether the evidence supports the verdict, examine the information, instructions ex-

cepted to, and judgment, and will affirm the judgment if no material error is apparent. Hulsey v. State, 82 Okl.Cr. 332, 169 P.2d 771; Barber v. State, 94 Okl.Cr. 306, 235 P.2d 726.

We find the information regular in every respect, and we do not find where demurrer was interposed.

■ The evidence discloses that the prosecuting witness, R. L. Braden, Jr., to satisfy his craving for whiskey, which he admitted, employed the defendant, a colored boy, to guide him to night spots in the colored section of Tulsa, for the purpose of procuring and drinking whiskey. Braden testified that he got off from his work about 11:30 at night and that he and his brother commenced to drive around, riding in the car of witness. At some point the defendant was invited into the Braden car and Braden said that he drove his brother back to his shop and was going to drive Williams, the defendant, home. He said that he stopped to get another half pint of whiskey to take home. He admitted that he and the defendant had been drinking. He said that he went to one place and could not get whiskey, so he went across the street, and Williams followed. Said he:

"A. Then he walked back to the side and back of me and put his arm around my neck; he had something in his hand, I couldn't see too clear, it was still dark there, and he told me I better not call the cops and he started going through my pockets.

"Q. Did he have any object in his hands? A. In his left hand he had something, I would say it was a knife. I couldn't say what kind or size.

"Q. Did you feel anything about your throat? A. The way he placed that hand, there was just the presence there, I felt it just one time kind of touch it there I would say.

"Q. Did he say anything other than you better not call the cops? A. Well, he said he would kill me if I did, that was in the conversation.

"Q. What did he do after that? A. Well, he, after he took everything out of my pockets there, he reached over with his right hand and took my wrist watch off of my left arm and told me to go on and I better not look back, and I started across the tracks toward Archer, kind of the opposite way from my car, to get my bearings, to see what was going on."

Witness said that thereafter he 'phoned the police. He testified that defendant took the items from him as set forth in the information, and he identified a number of items that had been by the police recovered from the defendant.

Maxine Bell testified that she was acquainted with the defendant, and that on the early morning of February 9, 1957 he came up to her room at 339 North Franklin Place and wanted her to go to Arch's Chili Parlor where they each drank a cup of coffee, and a quart of beer together. She said that defendant gave her a wrist watch and flash light to keep for him, and that she decided to take these items to the police station. She identified State's exhibits 1 and 2 as the items.

A. W. Berry, police officer, testified to having a conversation with the defendant on the morning of February 10, 1957, after his arrest on the 9th, and that defendant admitted robbing Braden, but would not sign a statement to that effect.

There was other evidence for the State, but the above is sufficient for our purpose, except the State also proved the prior conviction of defendant alleged in the information.

The defendant testified that on the night and early morning of February 8 and 9 that he chauffeured defendant around to whiskey spots in the colored section of Tulsa, and that Braden wanted a date with a girl (and this statement was not rebutted by the State); and that he asked defendant to keep his watch and flash light for him in case he got "rolled". Defendant said that he waited for Braden and when he returned to the car they got into an argument about $6 that Braden had paid defendant for driving him around, and that Braden left and he forgot to give him the watch and flash light. He denied getting Braden's money, except the $6 that had been paid him for his services.

Defendant on cross-examination admitted that he had previously been convicted for car theft in 1952, and convicted of robbery in 1956, and also of assault, and convicted in Federal court under the Dyer Act, 18 U.S.C.A. §§ 2311–2313.

While the admitted conduct of the prosecuting witness in his foray into the colored section of Tulsa in search of liquor, and drinking with the defendant, who was a stranger to him, is to be condemned, and his moral conduct is to be deplored, nevertheless there was evidence that the prosecuting witness was robbed by the defendant. Such evidence is sufficient to support the verdict of the jury. Ryan v. State, 97 Okl. Cr. 119, 258 P.2d 1208.

We find no material error. The judgment is affirmed.

BRETT, P. J., and NIX, J., concur.